FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JUN 30 2011 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
NELSON RODRIGUEZ,

                Petitioner,

-against-

CAMERON LINDSAY,

                Respondent.
------------------------------------------------------------x

NOT FOR PUBLICATION
MEMORANDUM & ORDER
09-CV-2915 (CBA)

AMON, Chief United States District Judge:

Nelson Rodriguez, pro se, has petitioned the Court for a writ of habeas corpus, 28 U.S.C. § 2241, alleging that his due process rights were violated when he was disciplined after a corrections officer found a sharpened toothbrush under his mattress at the Metropolitan Detention Center in Brooklyn, New York. For the reasons that follow, the petition is denied.

## BACKGROUND

On October 3, 2008, Rodriguez was admitted to the Metropolitan Detention Center ("MDC") in Brooklyn as a pre-trial inmate. At all times relevant to this petition, Rodriguez was, according to the uncontested allegations in his petition, assigned to an open housing unit that held about 120 inmates in a dormitory setting. The unit comprised ten rows of bunks that were arranged about four feet apart. Each row contained six bunks (two beds each) that were set two to three feet apart.

On December 19, 2008, at about 6:25 p.m., while conducting a unit shakedown, a corrections officer (Mahadeo) discovered a "plastic toothbrush that was sharpened to a point and wrapped with blue tape at the base" under Rodriguez's mattress. (Resp. Ex. 1 ¶ 11.)

1

Later that evening, Mahadeo prepared a written incident report charging Rodriguez with possession of a weapon. Rodriguez was provided a copy of the report the next day, December 20, 2008 at about 3:16 p.m. (Id. ¶¶ 15–16; Resp. Ex. 2 ¶ I.A.)

Another corrections officer, Bledsoe, conducted an investigation on January 5, 2009. (Resp. Ex. 1 ¶ 22.) According to Bledsoe's report, the investigation was "a rehearing, because the first investigation on 12-20-08 [was] missing." (Id. ¶ 25.)

The form on which the investigation was reported indicates that Bledsoe began the investigation by providing Rodriguez with a second copy of the incident report. (Id. ¶ 14.) According to Bledsoe's report, Rodriguez then told him, "It is not my weapon, I was watching TV when the Officer went into my cell. I think my cell mate told on me because the officer went to my locker and not my cell mate's locker. Also, my cell mate didn't get locked-up. I know nothing about that weapon." (Id. ¶ 24.)

The Unit Disciplinary Committee ("UDC") considered the incident and investigation reports at an initial hearing on January 7, 2009. (Id. ¶ 17–21.) At that hearing, Rodriguez told the committee, "I don't know anything about that shank. I've been on that unit for two months and I never had any issues." (Id. ¶ 17.)

Consistent with Bureau of Prisons regulations, the UDC referred the charge to the Discipline Hearing Officer ("DHO") because the charge was "serious and warrant[ed] consideration for other than minor sanctions," 28 C.F.R. § 541.15(h). (Id. ¶ 19.)

The DHO held a hearing on January 14, 2009. (Resp. Ex. 2 ¶ I.B.) Rodriguez, who waived his right to have a staff representative present, told the DHO, according to the DHO's summary of his testimony, "That is not mine. I do not know anything about that. He went to my locker and then went straight to my mattress. He had patted everyone down in my row. The

other day the orderlies were talking about they had to get somebody out. They set me up. I have no problems with anyone. I never lock my locker." (Id. ¶ III.B.) Rodriguez did not present any documentary evidence and did not call any witnesses, even though he had the right to do both. (Id. ¶ V.)

The DHO found that Rodriguez had committed the charged offense—possession, manufacture, or introduction of a weapon—relying upon the incident and investigation reports, Rodriguez's statements, and a photograph of the weapon. (Id.)

The DHO's decision further states, "You claim you were set up but there was no[] information to support your claim." (Id.) The DHO concluded that "the greater weight of the evidence" supported the finding that Rodriguez had committed the charged offense. (Id.)

By way of sanction, Rodriguez was ordered to serve forty days of disciplinary segregation, was disallowed forty days of good conduct time, and lost two hundred days of visiting and commissary privileges. (Id. ¶ VI.)

Rodriguez subsequently filed a regional administrative appeal, asserting that the weapon was not his, that he had been set up, and that he had always been a model inmate. He asked that video cameras in his housing unit be checked. (Resp. Ex. 3.)

The appeal was denied on February 20, 2009 because the "DHO considered the evidence presented, found the reporting officer's statement and the physical evidence carried greater weight [than Rodriguez's unsupported claim of innocence], and reasonably determined [Rodriguez] committed the offense." (Id.)

Rodriguez then filed a central office administrative appeal, arguing that the DHO decision should be overturned because of a "technicality." (Resp. Ex. 4.) He stated that he had

recently re-read the incident report and observed that Mahadeo had said that he discovered the weapon while conducting a shakedown on "3 South," but Rodriguez was housed on "3 North."

The appeal was denied on May 19, 2009, because the "DHO's decision was based upon the greater weight of the evidence." With respect to the "technicality," the appeals administrator stated, "the record reveals that the place of the incident report is accurately listed in section 9 of the incident report as BA-009-04U. This was your quarters assignment at the time of the incident."

Rodriguez then filed the habeas petition that is the subject of this order on June 30, 2009. He filed an amended petition on October 16, 2009. Both petitions assert that Rodriguez's due process rights were violated in various ways in connection with the disciplinary proceedings just described.

By way of relief, although Rodriguez initially requested that all of the sanctions imposed be reversed, the amended petition asks only that Rodriguez's good conduct time be reinstated. He says that the other sanctions "are at this point moot," (Am. Pet. at 9.) See Williams v. Menifee, No. 05 Civ. 4045, 2006 WL 2481823, at *3 n.1 (S.D.N.Y. Aug. 25, 2006) ("Habeas review is available only where the petitioner is in custody. Therefore, the only sanction imposed by the DHO that is properly the subject of review is the revocation of 27 days of 'good conduct' credit.").

## DISCUSSION

Three of Rodriguez's complaints about his disciplinary proceedings warrant discussion. They are that (1) Rodriguez's initial UDC hearing was not held within three days of the incident; (2) Rodriguez was never provided a copy of the photograph of the weapon; and (3) insufficient

4

evidence supports the conclusion that Rodriguez possessed the weapon that was found underneath his mattress.

The Supreme Court has said that "inmates retain due process rights in prison disciplinary proceedings." Wolff v. McDonnell, 418 U.S. 539 (1974) (discussing the due process protections to which inmates facing serious sanctions are entitled); see also Hanrahan v. Doling, 331 F.3d 93, 97 (2d Cir. 2003). This means that a disciplinary proceeding through which good conduct credits may be lost must provide: (a) advance written notice of the alleged violation; (b) when consistent with institutional aims, an opportunity to call witnesses and present documentary evidence in defense; (c) a "written statement of the factfinders as to the evidence relied upon and reasons for the disciplinary action"; (d) an impartial factfiner; and (e) a decision supported by "some evidence." See Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 454–55 (1985); see also Wolff, 418 U.S. at 563–66.

With respect to the "some evidence" requirement, the Supreme Court has said: "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Hill, 472 U.S. at 455–56.

The Second Circuit has interpreted the "some evidence" rule to require "reliable evidence." Luna v. Pico, 356 F.3d 481, 488 (2d Cir. 2004) (citing Taylor v. Rodriguez, 238 F.3d 188, 194 (2d Cir. 2001), and Zavaro v. Coughlin, 970 F.2d 1148, 1152 (2d Cir. 1992)).

**1. Delayed Hearing**

Rodriguez, relying upon Bureau of Prisons regulations, contends that he was denied due process because his initial UDC hearing was not held until eighteen days after the weapon was

discovered under his mattress. See 28 C.F.R. § 541.15(b) ("inmate so charged is entitled to an initial hearing before the UDC, ordinarily held within three work days from the time staff became aware of the inmate's involvement in the incident").

This argument is not persuasive, first, because there is no suggestion that Rodriguez was at all prejudiced by the delay in holding his initial hearing. Rodriguez has provided no authority, and the Court has found none, for the proposition that failure to strictly honor regulatory deadlines, without more, renders a prison disciplinary proceeding inconsistent with due process. The Court concludes that it does not. See Ortiz v. Holt, 390 F. App'x 150, 152 (3d Cir. 2010) ("Wolff did not require that a hearing be held within three days (or a specific time frame)"); Scott v. Craig, No. 05-CV-1359, 2008 WL 4866051, at *5 (N.D.N.Y. Nov. 7, 2008) ("Petitioner has not articulated any prejudice allegedly suffered as a result of the delay."); Crum v. Dodrill, 562 F. Supp. 2d 366, 381 (N.D.N.Y. 2008) ("even if Defendants had not so complied with that regulatorily imposed deadline, no constitutional due process violation would have occurred"); Williams, 2006 WL 2481823, at *5 ("the Court fails to see how the alleged delay amounts to a violation of Williams' due process rights").

The argument also is not persuasive because, even if the regulations are constitutionally significant, Rodriguez's initial UDC hearing was held consistent with the relevant regulations. Those regulations provide that the limitations periods described in section 541.15 may be extended "for good cause shown" and "documented in the record." 28 C.F.R. § 541.15(k). Here, the UDC report indicates that, because of a lost investigation report, the investigation had to be conducted a second time, which led to the delay. (Resp. Ex. 1 ¶ 25.)

Moreover, the DHO report acknowledges that the UDC hearing was not timely held and says that this was because of "an administrative error." (Resp. Ex. 2 ¶ V.) It also states that in

6

accordance with prison regulations, "the unit team has requested and been granted an extension by the Warden." (Id.)

This renders the hearing consistent with the regulations and consistent with even a more generous view of due process. See Ortiz, 390 F. App'x at 152 ("[T]he documented reason for a delay was the need for a revision to the incident report. The regulation was not violated."); Williams, 2006 WL 2481823, at *5 ("even if a delay in holding the initial hearing would otherwise support a due process claim, the time for holding the hearing was duly extended").

### 2. Failure to Provide Photograph

Rodriguez's second argument is that he was never provided a photograph of the weapon that was discovered under his mattress. He has not explained why he was entitled to this photograph or how he would have used it in defending the charges against him.

This argument is rejected because the Court has found no authority for the proposition that an inmate is entitled, as a matter of course, to physical or documentary evidence in defending against prison disciplinary charges. See Bader v. Eichenlaub, No. 08-CV-11272, 2009 WL 2568530, at *3 (E.D. Mich. Aug. 17, 2009) ("Petitioner also argues that his due process rights were violated because he was not provided with a photocopy of the drill bit. The due process protections set forth in Wolff do not require that physical evidence be provided to an inmate.").

Because there has been no allegation or showing that the denial of a photograph of the weapon prejudiced Rodriguez's defense, the Court will not grant relief on these grounds.

### 3. Sufficiency of the Evidence

Finally, Rodriguez argues that insufficient evidence supports the conclusion that he possessed the weapon that was found under his mattress. He observes that he was housed in a

dormitory with about 120 other inmates, who all had access to his bunk. Because of this, "not any one prisoner is less innocent or less guilty than the other." (Pet. Reply at 4.) He says that to "find guilt in this type of situation would render the due process rights of prisoner[s] to be ineffective in an overcrowded prison facility." (Pet. Mem. at 8.)

The issue of whether "some evidence" supports Rodriguez's conviction is a closer question but ultimately not one that is resolved in his favor. There is some case law that arguably supports Rodriguez's position. See Broussard v. Johnson, 253 F.3d 874, 877 (5th Cir. 2001) ("The government argues that the bolt cutters provide the necessary support for the disciplinary board's decision. When we disregard the confidential informant's tip, however, the only evidence linking Broussard to the bolt cutters is that they were found in an area in which he worked, but to which approximately one hundred inmates had access."); Fulcher v. Kastner, No. 06-CV-102, 2008 WL 2625848, at *3 (E.D. Tex. June 30, 2008) ("In the prison disciplinary context, constructive possession provides sufficient evidence of guilt if relatively few inmates have access to the area."). The circumstances here can be distinguished from those present in the cited cases. As an initial matter, Rodriguez's bunk was not truly "common" space in the sense that all inmates in his dorm shared equal responsibility for it. The DHO was entitled to conclude that Rodriguez generally could, and in fact did, monitor his personal space (including his mattress) such that the discovery of a weapon under his mattress, absent other evidence, was sufficient to support his conviction of possession of that weapon. This general rule is well supported. See Beckford v. Martinez, No. 08-CV-2023, 2010 WL 1791182, at *5 (M.D. Pa. May 4, 2010) ("Beckford, like all BOP inmates who reside at a prison camp, dormitory setting or have a cellmate, are aware that they must keep their area free of contraband."); Waters v. Vazquez, No. 206 Civ. 274, 2007 WL 473024, at *1 (S.D. Ga. Feb. 8, 2007) ("While Petitioner's

housing unit may have been populated by many other inmates living in an 'open dormitory style,' the contraband was found in petitioner's cubicle, under the mattress of Petitioner's bunk. This location is distinguishable from a prison's kitchen, as it is clearly an area over which the inmate exercises greater dominion and control.").

Moreover, there are no facts which undermine the logical conclusion that Rodriguez was responsible for the weapon found in his personal space. Significantly, Rodriguez has not offered evidence that, for example, another inmate accessed his bunk near the time that he says a weapon was placed under his mattress. Such evidence might render sole reliance on the general rule inappropriate. Cf. Fulcher, 2008 WL 2625848, at *4 ("Petitioner contends that 280 inmates had access to his bunk in the open dormitory, including one who was sitting on petitioner's bunk minutes before the money was found" (emphasis added)).

It is worth noting that, on these facts, adopting Rodriguez's position would mean that, in all prison dormitory (or similar) settings, the discovery of contraband in the personal space of an inmate would be insufficient to support the imposition of discipline consistent with due process. Adoption of such a rule would significantly impair the ability of corrections officials to deter weapons possession in dormitory settings. See Quintanilla v. O'Brien, 127 F. App'x 887, 889 (7th Cir. 2005) (rejecting assumption that that all prisoners have equal access to unlocked cells because that assumption would render discipline too difficult in all prisons that "do not operate on continuous lockdown").

In sum, "some evidence" supports the conclusion that Rodriguez possessed the weapon that was discovered under his mattress.

## CONCLUSION

The Court has considered all of the arguments suggested by Rodriguez's petition and they are without merit. The petition is denied. The Clerk of Court is directed to enter judgment and to close this case.

SO ORDERED.

Dated: Brooklyn, New York
     June  30 , 2011

/S/

Carol Bagley Amon
United States District Judge